RICHARD H. DANA & others *vs.* CHARLES VALENTINE.

An owner of vacant land, which is intended for house lots, is not entitled to an injunction to restrain the exercise of an offensive trade in the vicinity thereof, whereby its value is diminished. Such owner has a complete and adequate remedy at law for the injury so caused.

Though a party is entitled, upon a bill in equity, to an injunction to restrain the exercise of an offensive trade so near to his dwellinghouse as to be a nuisance to him, yet if it be doubtful, on the evidence, whether he who causes the nuisance has not a prescriptive right to exercise the trade there, the court will not issue such injunction, until the party complaining has established his right to redress, in a suit at law. And the court, in such case, will not suspend the proceedings on the bill, until a trial of the right at law, and issue a temporary injunction, to restrain the defendant in the mean time, unless there is danger of irreparable damage to the plaintiff.

Where a party exercises an offensive trade in the same place for more than twenty years, with no molestation or interruption, except a suspension thereof for two years before the twenty years elapse, he does not, by such suspension, lose his right, unless it appears that he intended to abandon and not resume the exercise of such trade.

Where several plaintiffs unite in a bill praying for an injunction, and only part of them show a title to relief, the court is authorized, by the Rev. Sts. *c.* 100, § 22, to allow an amendment of the bill, by striking out part of the plaintiffs, even after issue joined and evidence published.

THIS was a bill in equity, brought by ten plaintiffs, praying for an injunction to restrain the defendant from carrying on the business of manufacturing soap and candles, and of slaughtering cattle, &c., in the town of Cambridge.

The bill alleged that six of the plaintiffs were, and long had been, severally seized and in the actual possession of freehold estates in several parcels of land in said Cambridge, fronting on Pearl Street, in the immediate vicinity of a dense and rapidly increasing population ; which lands would be of great value and in great demand for dwellinghouses, but for the existence of the nuisances hereinafter complained of, and were of comparatively small value for any other purpose than for building lots : That the other four plaintiffs were, and long had been, severally seized and possessed of dwellinghouses in said Cambridge, near to said street, which were severally occupied and inhabited by them, with their several families : That the defendant, for five years next before the filing of the bill, had been, and still was, possessed of a lot of land and buildings, fronting on said street, contiguous and near to the aforesaid lands and dwellinghouses of the plaintiffs ; and that he, about five years since, commenced and has ever since wrongfully exercised and carried on, in and upon his said lot of land and buildings, the trade and business of manufacturing soap and candles, and of slaughtering cattle, and of melting and trying out grease and manufacturing tallow, from the bones and offal of cattle, whereby the air, within and about the beforementioned dwellings and lands of the plaintiffs, had constantly been, and still was, impregnated with noisome, noxious and offensive vapors, fumes and stenches, and had been, during all the time aforesaid, and still was, by means thereof, rendered corrupt, offensive and unwholesome . That the aforesaid lands of two of the six plaintiffs first above-mentioned had been, during the time aforesaid, and still were, flowed and injured by the feculent matter proceeding from the defendant's slaughter house on his said lot of land : That the said lands of all the plaintiffs had been, and still were, by reason of the said trades so injuriously exercised by the defendant, rendered unsaleable and of no value ; and that the plaintiffs,

who own the dwellinghouses abovementioned, and their families, had been and still were greatly harassed and annoyed, their health endangered, and their dwellings rendered uncomfortable and unfit for habitation. The bill further alleged, that the defendant, in the exercise of his business of slaughtering cattle, and as incident thereto, greatly annoyed and injured the plaintiffs, who are last abovementioned, and their families, by filling said street with herds of cattle, and thereby often rendering it impassable with safety or comfort ; and also by spreading upon the fences, on both sides of said street, the hides taken from slaughtered cattle, and thereby filling the air with noxious stenches, &c.

It was further alleged in the bill, that within two months next before the filing thereof, the defendant's buildings, in which he exercised said trades, were consumed by fire, and that the plaintiffs had requested him to refrain from rebuilding and from carrying on said trades any longer in that place ; but that the defendant had refused so to refrain, and had avowed his determination *to rebuild, and to carry on said trades as before,* and had begun and was proceeding in the erection of buildings, &c., for that purpose.

The bill concluded with an averment that the plaintiffs had no plain, adequate and complete remedy at law, and a prayer that a writ of injunction might be ordered and issued against the defendant, to desist from recommencing either of said trades in the place or vicinity aforesaid, and that he might be decreed to pay to the plaintiffs, respectively, the damages sustained by them, by reason of his former wrongful exercise of said trades.

The defendant's *answer* admitted, that in the year 1825 he became the occupant of the lot of land and buildings mentioned in the plaintiffs' bill, and that in 1828 he became the owner thereof in fee, and had, from his first occupation thereof, there carried on the business of slaughtering cattle, and boiling and trying out tallow, and for the last five years had been there engaged in manufacturing soap and candles ; but he denied that the air within and about the premises of the plaintiffs had been thereby constantly, or during any part of said five years, im-

pregnated with noisome or unwholesome vapors, so as to render the same offensive or injurious to the plaintiffs or their families, or that the lands of either of the plaintiffs had ever been flowed or injured by the feculent matter proceeding from the defend ant's slaughter house. The defendant also denied that either of the plaintiffs, or their families, had suffered any great annoyance or injury, or been rendered greatly uncomfortable by any of the causes set forth in their bill : He admitted, however, that during part of the hot season of some years, prior to 1836, disgusting and offensive vapors, fumes, &c., did proceed from the matter which accumulated about his slaughter house, whereby the air on the plaintiffs' premises might have been and probably was a little corrupted, and rendered a little offensive and uncomfortable; but denied that such was the fact since the year 1835.

The defendant also averred, in his answer, that Wheeler and Gay, from whom, through mesne conveyances, he derived title to his said lot of land, &c., purchased said lot in the year 1816, and in that year erected thereon buildings, &c., suitable for the purpose of slaughtering cattle, and ever thereafter, for seven years next ensuing, there carried on the business of slaughtering cattle and boiling and trying out tallow ; and that the same business was afterwards there carried on by others, excepting two years, until the year 1825, when the defendant became the occupant of said lot and buildings, as above by him stated.

The plaintiffs filed a general *replication*, and evidence was taken by both parties.

The argument was had at the last October term.

*Greenleaf & R. H. Dana, Jr.*, for the plaintiffs.

*Buttrick*, for the defendant.

WILDE, J. [After stating the substance of the bill and answer.] The material facts alleged in the bill are satisfactorily proved. Indeed most of them are admitted in the answer. The charge, however, as to the *unwholesomeness* of the air is neither admitted by the defendant, nor satisfactorily proved by the plaintiffs. But according to the view we have taken of the question, whether, upon the whole matter, the plaintiffs are entitled to the relief prayed for, we do not consider it necessary

to discuss the conflicting evidence on this point, nor that in respect to the extent of the plaintiffs' damages, about which the numerous witnesses do not entirely coincide.

The facts admitted by the answer are abundantly sufficient to entitle the plaintiffs to relief, either jointly or severally, unless the defendant can show a sufficient defence. Two grounds of defence are relied on. The first is, that the plaintiffs, if they have been injured, have a complete and adequate remedy at law. And in the second place, that the defendant has made out a good prescriptive right and justification.

As to the first ground of defence, we are of opinion, that the several plaintiffs, who own vacant lots, on which there are no dwellinghouses, have a complete and adequate remedy at law, and that an action at law for the recovery of damages for the diminution of the value of their lands, by the nuisance alleged, is the only suitable and appropriate remedy. Upon no principle of equity can the court interpose in their favor, by injunction on the defendant to desist from carrying on his trade ; there being no certainty that dwellinghouses will ever be erected on these premises : Or if there should be, it is uncertain when such erections may be made. To require this extraordinary relief, the injury complained of must actually exist, or the danger must appear to be certain and immediate, and not depending on any contingency. We think it therefore very manifest, that these owners of vacant lots have made out no title to the interposition of a court of equity. *Attorney General* v. *Nichol*, 16 Ves. 342. *Fishmongers' Co.* v. *East India Co.* 1 Dick. 164. *Wynstanley* v. *Lee*, 2 Swanst. 336. *Bonaparte* v. *Camden & Amboy Rail Road Co.* 1 Bald. 231. 2 Story on Eq. § 925.

On this ground the defendant's counsel contends that the bill must be dismissed, and that by the rules of pleading and practice in courts of equity, it cannot, at this stage of the proceedings, be amended. And several cases have been cited, in which it was decided that if a party, having an interest, joins with him, as a co-plaintiff, a party having no interest, the bill is demurrable, if the facts appear on the bill, and if not, that they may be well pleaded in defence. And as to the rule of amendments, it

is well settled in the courts of equity in England, that no amendment generally is allowable, after the parties are at issue and witnesses have been examined. But there are some exceptions, when it is necessary to make new parties; which may be done by special leave of court. Story Eq. Pl. § 332. Mitf. Pl. (3d ed.) 262. *Goodwin* v. *Goodwin*, 3 Atk. 370. But on the question of amendments we are not bound by the English rules of practice. By our Rev. Sts. *c.* 100, § 22, " the court, in which any civil action is pending, may, at any time before judgment rendered therein, allow amendments, either in form or substance, of any process, pleading, or proceeding in such action, on such terms as shall be just and reasonable." Under this provision, we should not hesitate to allow an amendment of the bill on reasonable terms, if by any amendment it could be maintained.

We are therefore to consider the second ground of defence, and to determine whether either of the plaintiffs, according to the rules and principles of equity, is entitled to the relief prayed for.

The defence is, that the defendant, and those from whom he derives his title, have been in the possession of the buildings in which he carries on his trade, for more than twenty years; during which time, he and they have carried on said trade without molestation or interruption, excepting for about two years, when the said buildings were not so used by them. This, *primâ facie*, is a good foundation for the presumption of a grant, unless the said *non user* is to be considered as breaking the continuity of the possession. The facts and circumstances in evidence are not sufficient to enable the court to give any decisive opinion on this point; but such as the evidence is, it is not sufficient to show any relinquishment or abandonment, by the persons under whom the defendant claims, of any of their privileges; and no interruption of their enjoyment of them by the plaintiffs is either proved or alleged. The mere ceasing to enjoy an easement does not destroy a party's right, unless it appears from the facts and circumstances that he intended to abandon and not to resume it. So it was decided in *Moore* v. *Rawson*, 3 Barn.

& Cres. 332. *S. C.* 5 Dowl. & Ryl. 234. In that case, the party's right to the easement had become perfect before he ceased to enjoy it, and in that respect it differs from the present case ; but the principle, we think, applies here. The material inquiry in all such cases is, whether there was an intention to abandon the easement or privilege before enjoyed, or whether the *non user* is imputable to some other cause. See Gale & Whatley on Easements, (Amer. ed.) 262.

Another objection to the defendant's title by prescription is, that until lately the plaintiffs suffered no damage from the alleged nuisance, and therefore could not interpose to prevent its continuance. But it is very clear that where a party's right of property is invaded, he may maintain an action for the invasion of his right, without proof of actual damage. So it was decided in *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 247, and the principle is unquestionable. 2 East, 161. 2 Met. 469. 4 Met. 477.

Some other objections were made to the defendant's prescriptive right, which however it is not important to remark upon, for the most that can be urged is, that the defendant's right is doubtful ; and that is sufficient for him to show, as a defence, in the present suit. It has been frequently decided that when works have been suffered to remain three years or upwards, that is considered such laches as to preclude the party from having relief in a court of equity, without going first to law. It was so decided in *Weller* v. *Smeaton*, 1 Cox, 102, and in *Reid* v. *Gifford*, 6 Johns. Ch. 19.

In the present case, the defendant has been in the uninterrupted possession of his buildings and works ever since the year 1825, carrying on his trade and business during the whole time, without any objection made by the plaintiffs until recently. And in addition he has proved a good *primâ facie* title by prescription. Whether the plaintiffs may be able to impeach this title effectually, we do not know ; but that question is to be tried in an action at law. And before its determination, this court, as a court of equity, will not interpose.

Nor is this a case in which the proceedings ought to be sus-

pended until the trial and decision of the title at law. That would be a proper course to pursue, where a temporary injunction becomes necessary to prevent irreparable damage ; but to justify such an interposition, the injury ought to be of such a nature as not to admit of delay. This is not such a case. And there seems to be no good reason to doubt, that if the plaintiffs can maintain an action at law, they may obtain an adequate remedy without any interposition of a court of equity. So if the nuisance complained of has become, or shall become, a public nuisance, the law has provided an effectual remedy.

*Bill dismissed.*